UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MICHAEL H.,

Plaintiff,

v.

CASE NO. 1:25-cv-00709 (JGW)

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

---

J. Gregory Wehrman, U.S. Magistrate Judge,

**MEMORANDUM-DECISION and ORDER**

The parties consented in accordance with a standing order to proceed before the undersigned. The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the Court on Plaintiff's motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Doc. 7) and Defendant's motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Doc. 12).[1] Upon review of the administrative record and consideration of the parties' filings, Plaintiff's Motion for Judgment on the Pleadings (Doc. 7) is **DENIED**, Defendant's Motion for Judgment on the Pleadings (Doc. 12) is **GRANTED**, and the decision of the Commissioner is **AFFIRMED**.

---

[1] Plaintiff filed notice that he was not filing a reply brief and instead was relying on the arguments raised in his opening brief. (Doc. 13.)

# I. RELEVANT BACKGROUND

## A. Procedural Background

On October 28, 2022, Plaintiff protectively filed an application for a period of disability and disability insurance benefits, alleging an onset date of October 1, 2019. (Tr. 98, 289-95.) On November 2, 2022, Plaintiff filed an application for supplemental security income, alleging the same onset date. (Tr. 105, 279-88.) Plaintiff's claims were denied initially and on reconsideration. (Tr. 112, 113, 130, 131.) He then requested a hearing before an Administrative Law Judge (ALJ). (Tr. 167-68.) Plaintiff appeared with counsel for a video hearing before ALJ Joshua Pinkus held on August 9, 2024. (Tr. 45-97.) On September 5, 2024, the ALJ issued an unfavorable decision, finding Plaintiff was not disabled. (Tr. 15-44.) Thereafter, the Appeals Council denied Plaintiff's request for review, (Tr. 1-7), and Plaintiff timely filed his appeal to this Court.

## B. Factual Background

Plaintiff was born on November 17, 1980. (Tr. 52.) He completed ninth grade and did not obtain a GED. (Tr. 53.) He alleged his disabling conditions to include anxiety, ADHD, depression, bipolar disorder, and HIV. (Tr. 98, 105.)

### 1. Plaintiff's Hearing Testimony

At the hearing, Plaintiff testified as to his impairments. With regard to his physical impairments, Plaintiff testified to experiencing injection-site pain when receiving his injections for HIV, making it difficult to sit, walk, and stand, with discomfort lasting up to two weeks. (Tr. 70-71.) He indicated also feeling tired after the injections, sometimes needing to sleep for the rest of the day. (Tr. 71.) Plaintiff identified issues with his asthma, noting the tests had not identified the problem. (Tr. 73.) He described joint pain,

particularly in his wrists, as well. (*Id.*) Plaintiff further detailed some limitations with his arms and hands, difficulty picking up items, and pain in his arms and hands. (Tr. 81-82.) He also noted that his wrists sometimes lock up, and his hands would get numb and tingly. (Tr. 82.) He expressed his belief that he would be unable to work, and unable to pick up items, because of pain in his body, such as his joints and his stomach. (Tr. 83.)

Plaintiff also testified to his mental impairments, describing anxiety from being in public or around large crowds. (Tr. 74.) He indicated he did not believe he could be around people at a job. (Tr. 83.) He also described short-term memory problems. (Tr. 74.) He noted that it was helpful to have someone with him to complete tasks, as he often came across tasks he did not finish. (Tr. 79.) He explained that he sometimes gets irritated or angry and lashes out at others and that stress associated with parenting sometimes increased his depression. (Tr. 84.) Plaintiff identified the medications he took for his mental health, and he noted that the Seroquel makes him really tired. (Tr. 77.) He acknowledged that he was to take that medication at night but sometimes forgot. (Tr. 78.)

Plaintiff explained a typical day included trying to do some tasks around the house, such as laundry or dishes, but he noted that he might start them and then forget about them. (Tr. 76.) Plaintiff further detailed that he would drive to doctors' appointments, if he had them, but otherwise, he did not do too much. (*Id.*) He confirmed he could perform personal care tasks, such as showering and dressing. (*Id.*) Additionally, he noted that he did not work as much outside mowing or snow shoveling, like he used to, but he could accomplish both if he must. (*Id.*) He also indicated that he tries to do the grocery shopping. (*Id.*)

### 2. Medical Opinion Evidence

There are a number of medical opinions in the record, besides the initial agency reviewers. A summary of these opinions follows.

On February 17, 2023, Dr. Hongbiao Liu examined Plaintiff. (Tr. 643-50.) He issued a medical source statement reflecting that, in his opinion, Plaintiff "should avoid dust and other irritating factors due to the asthma condition." (Tr. 647.) He noted that the ventilation test was normal. (*Id.*)

Also on February 17, 2023, Dr. Christine Ransom evaluated Plaintiff's mental impairments. (Tr. 651-55.) She found no evidence of limitations and concluded that the "results of the evaluation are consistent with psychiatric conditions which are currently stabilized and will not interfere with the claimant's functioning on a daily basis." (Tr. 654.)

Plaintiff's mental health treatment provider, Terry Jo Brooks-Devlin, PMHNP (Psychiatric Mental Health Nurse Practitioner), offered her opinion twice. (*See* Tr. 969, 1007-15.) In a letter dated March 8, 2024, NP Brooks-Devlin indicated that she had been treating Plaintiff since 2017 and identified his diagnoses to include bipolar 2 disorder, major depressive disorder, generalized anxiety, and ADHD, which she opined manifested in various ways. (*See* Tr. 969.) She noted that Plaintiff experienced "persistent and overwhelming feelings of anxiety" which she opined interfered with "his ability to concentrate, make decisions, and complete tasks." (*See id.*) She explained that his "anxiety escalates and puts him into depression where he isolates, withdraws socially, and has passive suicidal ideation." (*Id.*) NP Brooks-Devlin next identified that Plaintiff "struggles with social interaction due to heighted anxiety and irrational thoughts," which she opined could "lead him to make impulsive decisions and behaviors." (*Id.*) Finally,

she recognized that Plaintiff had impaired cognitive functioning, exhibiting "memory problems, poor concentration, and disorganized thinking." (*Id.*) She opined that this condition impacted "his ability to perform tasks requiring sustained focus and mental clarity." (*Id.*) As a result of these issues, NP Brooks-Devlin opined that Plaintiff would meet the criteria for disability. (*Id.*)

On April 24, 2024, NP Brooks-Devlin completed a Mental Medical Source Statement. (Tr. 1007-15.) She identified the same treatment period and diagnoses, although she also included alcohol dependence (noting partial remission), depression, opioid abuse (in remission), and cocaine use (in remission). (Tr. 1009.) She noted his treatment to include medication management and counseling, and she also listed medication side effects which "might be speech issues, dizziness, lack of energy, fast heartbeat, stomach pain" as well as "drowsiness, coordination issues, memory issues, joint pain." (*Id.*) She cited to the March 8, 2024 letter when asked to identify the clinical findings to support "the severity of Plaintiff's functional impairment and symptoms." (*Id.*) She also opined as to Plaintiff's functional abilities, concluding Plaintiff could never, in a regular work setting: understand and remember very short and simple or detailed instructions; carry out detailed instructions; maintain attention for two hour segments; maintain regular attendance and be punctual within customary, usually strict tolerances; work in coordination with or proximity to others without being unduly distracted; and perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 1011.) He also could not, more than 20% of an eight hour day: remember work-like procedures; carry out very short and simple instructions; complete a normal workday or workweek without interruptions from psychologically based symptoms; interact

appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; or deal with normal work stress. (Tr. 1011-12.) NP Brooks-Devlin also opined that, due to his struggles with chronic anxiety, Plaintiff cannot "function to the best of his abilities around large groups." (Tr. 1013.)

On June 7, 2024, Dr. Katherine Wilkie issued a medical source statement. (Tr. 1206-10). She reported treating Plaintiff regularly since 2018, and she identified his diagnoses as "generalized aches and pains in muscle joints." (Tr. 1206.) She further noted his symptoms to be pain and fatigue and identified the location of his pain to be in the elbows, shoulders, knees, toes, and hips. (*Id.*) She further identified the "clinical findings and objective signs" to be "tenderness to touch." (*Id.*) Dr. Wilkie recognized anxiety and psychological factors generally as affecting Plaintiff's physical condition. (Tr. 1207.) She opined that Plaintiff's "attention and concentration needed to perform even simple work tasks" would be interrupted frequently by pain or other symptoms and also that he would be unable to handle even "low stress" jobs. (*Id.*) Dr. Wilkie opined that Plaintiff could sit for more than two hours at one time, but only stand for fifteen minutes at a time, and could sit and stand/walk for less than two hours total in an eight-hour workday. (Tr. 1207-08.) She further found that Plaintiff could need to include periods of walking—fifteen minutes every sixty minutes. (Tr. 1208.) She also concluded that he would need to take unscheduled breaks every hour, lasting fifteen minutes, and he could never lift twenty pounds or more. (*Id.*) Additionally, she opined that he can never crouch or squat, rarely bend, and only occasionally twist, climb ladders, or climb stairs. (Tr. 1209.) She found that Plaintiff would likely experience "good days" and "bad days" and

estimated that Plaintiff would miss more than four days per month as a result of his impairments or treatments. (*Id.*)

Dr. Coleman Cosgrove testified as a medical expert at the hearing after reviewing Plaintiff's file. He identified Plaintiff's impairments to include bipolar disorder, generalized anxiety disorder, a polysubstance abuse disorder, major depressive disorder, and ADHD. (Tr. 58.) He further testified that Plaintiff experienced a moderate limitation in each of the B Criteria categories: understanding, remembering, and applying information; interacting with others; concentrating, persistence, or maintaining pace; and adapting or managing himself. (Tr. 61.) Dr. Cosgrove also opined to certain functional limitations resulting from Plaintiff's impairments. (*Id.*) Specifically, he testified that Plaintiff

> is able to understand and remember simple instructions and procedures consistent with unskilled work. Claimant's able to maintain concentration, pace, and persistence for SVP 1 and 2 work-related tasks. Claimant is capable of appropriate social interactions in the workplace. However, with occasional interactions with coworkers, supervisors, and the general public. And the Claimant can adapt to a low-demand work setting consistent with unskilled work with non-fast-paced production quotas.

(Tr. 61.) He emphasized that Plaintiff should be limited to working more with things rather than people. (Tr. 62.) He further opined that Plaintiff would be off-task up to 10% of the workday and absent up to one day per month. (Tr. 63.) Dr. Cosgrove indicated that Plaintiff's past substance abuse did not have a material impact on the claim. (*Id.*)

When asked by Plaintiff's counsel what weight he gave to subjective reports, Dr. Cosgrove explained that "the objective evidence gives insight into the severity" and how the complaints impact functional capabilities. (Tr. 65.) When further questioned about treating provider's opinions, Dr. Cosgrove explained that "[t]he objective, longitudinal evidence in the file does not suggest that there would be any adverse findings as opined

by the provider." (Tr. 67.) Dr. Cosgrove further acknowledged certain abnormal mental examinations, but he concluded those would not support marked limitations. (Tr. 68.) Instead, he opined they would support limitations, which is why Dr. Cosgrove explained that he limited Plaintiff to "simple, routine tasks, but not semiskilled or skilled tasks." (*Id.*) As the ALJ pointed out, "Dr. Cosgrove cited a huge swath of evidence, including both treating source medical statements, during his testimony." (*See* Tr. 27.)

**C. ALJ's Decision**

Generally, in his decision, the ALJ made the following findings of fact and conclusions of law.

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2024. (Tr. 20.)

2. The claimant has not engaged in substantial gainful activity since October 1, 2019, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.). (Tr. 20.)

3. The claimant has the following severe impairments: Bipolar II Disorder; Generalized Anxiety Disorder; Attention Deficit Hyperactivity Disorder; Opioid Abuse, in remission; Cocaine abuse, in remission; Cannabis Abuse, in remission; Bronchial Asthma/Chronic Obstructive Pulmonary Disease ("COPD") (20 CFR 404.1520(c) and 416.920(c)). (Tr. 20-21.)

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). (Tr. 23.)

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can occasionally climb ramps and stairs, and never climb ladders, ropes or scaffolds. He must avoid ordinary hazards in the workplace such as unprotected heights and moving mechanical parts. He can tolerate occasional exposure to respiratory irritants, such as fumes, odors, dusts, gases and poor ventilation. He is able to understand and remember simple instructions. He is able to use judgment to make simple work-related decisions, and carry out simple instructions. He can have occasional interaction with the general public, occasional interaction with co-workers, and

occasional interaction with supervisors. He cannot perform work requiring a specific production rate, such as assembly line work or work that requires quotas. He can deal with occasional changes in a routine work setting. He is limited to object-oriented work, i.e., limited to working with things rather than people. He will be off-task 10% of the workday. He will be absent from work 1 day per month. (Tr. 24-25.)

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965). (Tr. 36.)

7. The claimant was born on November 17, 1980 and was 38 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963). (Tr. 36.)

8. The claimant has a limited education (20 CFR 404.1564 and 416.964). (Tr. 36.)

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2). (Tr. 36.)

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a). (Tr. 36.)

11. The claimant has not been under a disability, as defined in the Social Security Act, from October 1, 2019, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)). (Tr. 37.)

## II. LEGAL STANDARD

### A. Standard of Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501

(2d Cir. 2009). "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

**B. Standard to Determine Disability**

To be disabled under the Social Security Act (Act), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 416.905(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920(a).

At step one, the claimant must demonstrate that he is not engaging in substantial gainful activity. 20 C.F.R. § 416.920(b). At step two, the claimant must demonstrate that he has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 416.920(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational

requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 416.920(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient residual functional capacity (RFC) for the claimant to return to past relevant work. 20 C.F.R. § 416.920(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education, and work experience. 20 C.F.R. § 416.920(g).

## III. ANALYSIS

Plaintiff argues that remand is appropriate for several reasons. First, Plaintiff contends that the ALJ improperly evaluated the opinion of his treating mental health provider by over relying on normal mental status examination and insufficiently considering the regulatory factors. (Doc. 7-1 at 16.) Second, Plaintiff maintains that the ALJ failed to consider the side effects of Plaintiff's medications and their impact on Plaintiff's off-task time and absences. (*See id.*)

### A. The ALJ Properly Evaluated the Opinion of NP Brooks-Devlin.

Plaintiff argues that the ALJ erred in his evaluation of NP Brooks-Devlin's opinions because he ignored the explanations she provided to support her restrictions; her records do, in fact, support her opinions; and he failed to actually consider the consistency of the opinion against the longitudinal record. (Doc. 7-1 at 19-20, 22.) Finally, Plaintiff contends that the ALJ improperly relied on Dr. Cosgrove's testimony in rejecting NP Brooks-Devlin's opinions. (*Id.* at 24.)

With regard to an ALJ's consideration of medical opinion evidence, the *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017), applicable to claims filed on or after March 27, 2017, provide that the Commissioner is no longer required to afford any specific evidentiary weight to medical opinions, but is obligated to consider all medical opinions and evaluate their persuasiveness based on the following five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, with particular importance placed upon consistency and supportability. *Jacqueline L. v. Comm'r of Soc. Sec.*, 515 F. Supp. 3d 2, 7 (W.D.N.Y. 2021) (citing 20 C.F.R. § 416.920c(a) & (c)). To allow a reviewing court to trace the path of an ALJ's reasoning, an ALJ is required to explain his consideration of the supportability and consistency factors by pointing to specific evidence in the record to support the ALJ's findings regarding medical opinions. *Id.* (citing 20 C.F.R. § 416.920c(b)(2)).

With respect to supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source in the opinion, the more persuasive the medical findings will be. *Id.* (citing 20 C.F.R. § 416.920c(c)(1)). Similarly, with respect to consistency, the more consistent a medical opinion is with the evidence from other medical and nonmedical sources, the more persuasive the medical opinions will be. *Id.* (citing 20 C.F.R. § 416.920c(c)(2)). Supportability focuses on the fit between a medical opinion offered by the source and the underlying evidence presented by the source to support that opinion, while consistency focuses on how well a medical source opinion is supported by the entire record. *Rosario v. Comm'r of Soc. Sec*, 20 Civ. 7749, 2022 WL 819810, at *8 (S.D.N.Y. Mar. 18, 2022). "Even though ALJs are no longer

directed to afford controlling weight to treating source opinions – no matter how well supported and consistent with the record they may be – the regulations still recognize the 'foundational nature' of the observations of treating sources, and 'consistency with those observations is a factor in determining the value of any [treating sources] opinion.'" *Id.* (quoting *Shawn H. v. Comm'r of Soc. Sec.*, Civil Action No. 2:19-cv-113, 2020 WL 3969879, at *6 (D. Vt. July 14, 2020)) (alteration in original).

Having carefully reviewed the record, the Court finds the ALJ's evaluation of NP Brooks-Devlin's opinions to be proper and supported by substantial evidence. The ALJ conducted a detailed analysis of both the supportability and consistency of NP Brooks-Devlin's opinions, as his analysis spanned six pages of his decision. (*See* Tr. 28-30, 33-35.) He acknowledged the March 8 letter, recognizing NP Devlin-Brooks's conclusions that Plaintiff "had difficulty making decisions, completing tasks, making impulsive decisions, and exhibiting poor memory, concentration, and disorganized thinking" and noting that, "as will be discussed further below, NP Brooks-Devlin's own records significantly diverge on essentially all of the specifics alleged, highly damaging her supportability." (Tr. 28.) Given the thoroughness of the ALJ's analysis of NP Brooks-Devlin's opinions, the Court has no reason to conclude he did not consider the entirety of NP Brooks-Devlin's March 8 letter. *See David H. v. Comm'r of Soc. Sec.*, No. 21-cv-447S, 2023 WL 3316579, at *4 (W.D.N.Y. May 9, 2023) (acknowledging that "the mere failure to mention portions of a medical opinion is not cherry picking: ALJs are not required to mention or address every piece of evidence present, so long as the reviewing court can glean the rationale of the decision."). *See also Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 448 (2d Cir. 2012) (recognizing that an ALJ is not required to identify every

piece of evidence in his decision, and the failure to identify evidence does not mean it was not considered by the ALJ).

Moreover, ALJ Pinkus reasonably concluded that NP Brooks-Devlin's treatment notes did not support her opinions. He detailed the progression of treatment notes associated with Plaintiff's counseling. (*See* Tr. 29) (noting that "[t]his trend of contemporaneous notes that are highly at odds with NP Brooks-Devlin's opinion continued through the entirety of the records available"— citing numerous treatment notes). He ultimately concluded that "NP Brooks-Devlin's records simply do not support the degree of limitation alleged." (Tr. 30.) He properly noted that "[s]ubjective allegations and reports are informed by objective evidence, and in this case the objective evidence occasionally aligns with, often diverges from, and sometimes completely contradicts, NP Brooks-Devlin's opinion." (*Id.*) He concluded "[t]he wide gulf between NP Brooks-Devlin's opinion and her records substantially undermines the supportability of her opinion." (*Id.*) This Court agrees.

Plaintiff points to certain treatment notes from August 2023 through June 2024, arguing they support NP Brooks-Devlin's significant restrictions. (Doc. 7-1 at 20.) But the Court notes that the ALJ cited almost all of these treatment notes in his decision. (*See* Tr. 29) (citing Tr. 698) (acknowledging "claimant doing 'fine' and is 'stable' despite medication shortage, conditioned described as 'pretty good' and despite 'some impulsivity' he was 'overall stable' with organized, clear, and coherent thoughts"); (Tr. 29-30) (citing Tr. 700) (recognizing that "claimant reporting 'a lot of anxiety' and presenting with anxious mood, somewhat restricted affect, minimally production and spontaneous speech, limited insight, impulsive judgment, and restricted but 'overall organized'

thoughts."); (Tr. 30) (citing Tr. 696) (noting "claimant struggling with mood symptoms and anxiety, but continued engaging with treatment, he was 'slightly disheveled' but was otherwise appropriate and organized, he had 'fair but limited' insight and judgment and presented with some impulsive behavior"); (*Id.*) (citing Tr. 701) (acknowledging "claimant 'doing well' and 'overall stable' with medication adherence, mental status was alert and oriented, mood was tired due to holidays and a cold, he had 'minimally clear' and restricted, but adequate speech and was 'overall organized' despite limited judgment and insight"); (*Id.*) (citing 729) (noting "the claimant reported back pain and tested positive for a number of drugs, he denied using cocaine but when confronted with toxicology results showing a positive test, eventually admitted he had used"); (Tr. 35) (citing Tr. 1102-03) (finding "[t]he most severe abnormal findings occurred in February of 2024, when the claimant appeared disheveled, with restricted affect, had minimal but 'adequate' speech, and had limited insight and impulsive judgment.").

While Plaintiff may highlight other parts of these treatment notes or proffer a contradictory conclusion that they support his position, this simply identifies a conflict within the evidence. It is well settled that conflicts within the evidence are to be resolved by the ALJ, *see Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002), and once resolved by the ALJ, they cannot be overturned by this Court unless "a reasonable factfinder would *have to conclude otherwise*." *Brault*, 683 F.3d at 448 (emphasis in original) (citation omitted). Thus, the Court is plainly prohibited from re-weighing the evidence, which is really what Plaintiff requests. *See Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) ("Krull's disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents us from reweighing it."). Simply put, Plaintiff's disagreement

with the ALJ's resolution of conflicting evidence is not grounds for remand. *See David C. v. Comm'r of Soc. Sec.*, No. 6:23-cv-06510-CJS, 2024 WL 4347151, *18 (W.D.N.Y. Sept. 30, 2024) (citing *Lisa M. o/b/o J.S. v. Comm'r of Soc. Sec.*, No. 1:21-cv-00292 EAW, 2023 WL 3943997, at *3 (W.D.N.Y. June 12, 2023) ("A disagreement with how the ALJ weighed the evidence is not a valid basis to challenge the ALJ's determination.").

Further, contrary to Plaintiff's contention, the ALJ did not "over-rely" on mental status examinations. Rather, as demonstrated above, he included these status exam results as part of his narrative discussion of Plaintiff's treatment—along with treatment notes and Plaintiff's subjective complaints and reports. (*See* Tr. 29-30, 33-35.) Indeed, the ALJ recognized: "[t]his is not to say that the claimant never had any abnormalities – as the evidence above shows, the claimant did present with anxiety, worry, and depression on some occasions, almost never did it appear unstable or out of control, and the claimant often present with no symptoms at all." (Tr. 35.) He further noted that Plaintiff's activities were inconsistent with NP Brooks-Devlin's restrictions, as were his own reports. (*See id.*) Thus, the ALJ's conclusion that Plaintiff was not as restricted as NP Brooks-Devlin opined was reasonable.

The Court similarly rejects Plaintiff's remaining arguments. First, the Court finds the ALJ's consistency discussion to be sufficient. Again, the ALJ detailed many treatment records and carefully analyzed NP Brooks-Devlin's opinion in light of them. (*See* Tr. 34-35) (citing, e.g., Tr. 495, 498, 503, 508, 512, 548, 564, 602, 604.) Second, the Court finds no error in the ALJ's reliance on Dr. Cosgrove's testimony. This Circuit has long recognized that an ALJ may rely on a nonexamining source, even over a treating source, so long as the opinion is supported by substantial evidence. *See Diaz v. Shalala*, 59 F.3d

307, 313 n.5 (2d Cir. 1995) (citing *Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir. 1993)). The ALJ's detailed analysis of the opinions and the evidence in this case is sufficient to support his reliance on Dr. Cosgrove's opinion. *See Rushford v. Kijakazi*, No. 23-317, 2023 WL 8946622, at *1-2 (2d Cir. Dec. 28, 2023) (acknowleding the ALJ's analysis of supportability and consistency, and deferring to the ALJ's conclusion which relied more on the non-treating physician).

In sum, the Court finds there is "more than a mere scintilla" of evidence supporting the ALJ's RFC, including his resolution of conflicting evidence, and so the sufficient evidence standard has been satisfied. *See Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971) (recognizing that "substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") Plaintiff has simply not shown that "the record requires a reasonable factfinder to reach a different result." *See Spottswood v. Kijakazi*, No. 23-54-cv, 2024 WL 89635, at *3 (2d Cir. Jan. 9, 2024) (summary order).

**B. The ALJ Adequately Considered Any Side Effects from Plaintiff's Medications.**

Plaintiff argues that the ALJ erroneously failed to consider the side effects of the bimonthly injections received to treat his HIV. (Doc. 7-1 at 26.) He contends that Dr. Cosgrove's opinion regarding off-task time and absenteeism related only to Plaintiff's mental impairments, and thus the ALJ made no allowance for any issues stemming from his physical impairments. (*See id.* at 26-27.)

The Court finds no error. First, there is no evidence, expert opinion or otherwise, to support Plaintiff's contention that he would be off-task or absent more than provided

for by the ALJ. While Plaintiff testified to injection-site pain and fatigue following an injection, nothing suggests it to be so debilitating that it would result in consistent off-task time or absenteeism. Indeed, the record reflects that after some injections, he had no issues. (*See* Tr. 1247) (reflecting injection without incident); (Tr. 1183-84) (reflecting Plaintiff reported having injection site pain sometimes but "not all the time"). Further, no medical expert opined that Plaintiff's fatigue or injection site pain would interfere with Plaintiff's ability to function or otherwise translate into off-task time or absenteeism.

Moreover, the ALJ recognized Plaintiff's identified side effects from these injections: "[t]hough there were some occasions where the claimant noted some temporary side-effects related to his bi-monthly antiviral treatment, there is no indication of any lasting effects or functional limitations." (Tr. 21) (internal citations omitted). Further the ALJ expressly noted that "[t]o the degree this mild sleep apnea or any other impairments impose any functional limitations in combination with other impairments, severe or nonsevere, they are accounted for through a reduction to a highly reduced range of simple, light work—which accounts for any potential effects like fatigue or lesser sleep quality through both lowered exertion and reduced mental requirements." (*Id.*)

With this issue as well, Plaintiff has not shown that "the record requires a reasonable factfinder to reach a different result." *See Spottswood,* 2024 WL 89635, at *3. Thus, the Court finds no error in the ALJ's RFC.

## IV. CONCLUSION

Based on the foregoing, the Court finds no basis for remand. **ACCORDINGLY**, it is:

**ORDERED** that Plaintiff's Motion for Judgment on the Pleadings (Doc. 7) is **DENIED**, and it is further

**ORDERED** that Defendant's Motion for Judgment on the Pleadings (Doc. 12) is **GRANTED**.

The Clerk of Court is **DIRECTED** to close this case.

Dated: November 25, 2026
Rochester, New York

J. Gregory Wehrman J.G.W.
HON. J. Gregory Wehrman
United States Magistrate Judge